CLERKS OFFICE U.S. DIST. COURT
LYNCHBURG, VA
FILED

June 05, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ B. McAbee
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |  |
|---|---|---|
| KATRINA-LAURA G. C.,[1] | ) | |
| | ) | Civil Action No. 7:25-CV-00315 |
| Plaintiff, | ) | |
| | ) | **REPORT &** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | By: C. Kailani Memmer |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Katrina-Laura G. C. (Katrina-Laura), by counsel, filed this action challenging the final decision of the Commissioner of Social Security (Commissioner) finding her not disabled and therefore ineligible for disability insurance benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Neither party has requested oral argument, and oral argument will not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I find that the ALJ erred in considering objective medical evidence in discounting Kartina-Laura's complaints regarding symptoms of her depression. Accordingly, and for the reasons detailed below, I respectfully recommend that the presiding District Judge reverse and remand the Commissioner's final decision.

---

[1] Due to privacy concerns, I use only the first name and initials of the claimant in Social Security opinions.

[2] On October 10, 2023, the presiding District Judge referred Social Security cases in the Roanoke Division to me. (Standing Order No. 2023-18.)

**STANDARD OF REVIEW**

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (brackets original).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

**CLAIM HISTORY**

Katrina-Laura was born in 1988 and completed two years of community college. R. 182, 230. On March 1, 2022, Katrina-Laura applied for DIB and alleged her disability onset date was September 1, 2021. R. 182. Her claim was initially denied on May 31, 2022, and again upon reconsideration on June 6, 2023. R. 104, 110. On June 30, 2023, Katrina-

2

Laura requested an ALJ hearing. R. 113. On March 19, 2024, the ALJ held an in-person hearing, where she was represented by counsel. R. 42. Mr. Harry Tanzey testified as a vocational expert. R. 67-71. On April 11, 2024, the ALJ issued an "Unfavorable Decision" analyzing Katrina-Laura's claims under the familiar five-step process,[3] finding her not under a disability from September 1, 2021, through the date of decision, and denying her claim for DIB. R. 35.

At the first step, the ALJ found Katrina-Laura had not engaged in substantial gainful activity since September 1, 2021. R. 19. At the second step, the ALJ found Katrina-Laura had the following severe impairments: (1) depression, (2) anxiety, (3) impulse control disorder, (4) intermittent explosive disorder, (5) learning disorder, (6) PTSD, (7) insomnia, (8) cervical and lumbar disorders, (9) arthralgia, (10) headaches, and (11) obesity. *Id.* At the third step, the ALJ found Katrina-Laura did not have an impairment or combination of impairments that, individually or in combination, meet or medically equal the severity of one of the listed impairments. R. 20.

The ALJ concluded Katrina-Laura had the RFC to perform light work[4] with the following limitations:

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

> the claimant can occasionally crawl or climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs, balance, stoop, kneel, or crouch. The claimant needs a low stress job (defined as having only occasional decision-making required and only occasional changes in a work setting), with no production rate or pace work such as assembly lines (where the work of others would be dependent on the claimant's actions), with occasional interaction with the public or coworkers and allowing for frequent supervision.

R. 25-26. At the fourth step, the ALJ found Katrina-Laura could not perform any past relevant work experience. R. 34. At the fifth step, based on the testimony of Mr. Tanzey, the ALJ identified the following jobs Katrina-Laura can perform, which exist in significant numbers in the national economy: (1) laundry worker, (2) price marker, and (3) grader/sorter. R. 34-35. Thus, the ALJ determined Katrina-Laura was not disabled from September 1, 2021, the alleged onset date, through April 11, 2024, the date of decision. R. 35. Katrina-Laura's appeal to the Appeals Council was denied on March 12, 2025. R. 1. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue, they are addressed within the Analysis section below.

---

> weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## ANALYSIS

On appeal, Katrina-Laura presents several assignments of error. (Pl.'s Br., ECF No. 17, at 13-28.) In response, the Commissioner argues the ALJ's decision should be affirmed because the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. (Def.'s Br., ECF No. 18, at 5-21.) Because the court finds remand is necessary based on a singular issue (as discussed below), the court need not consider the parties' other arguments.[5]

## I.    The ALJ erred in considering objective medical evidence in discounting Katrina-Laura's statements regarding her symptoms of depression.

An ALJ evaluates the claimant's symptoms in a two-step process. At the first step, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). At the second step, the ALJ evaluates the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently and appropriately. 20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, 2017 WL 5180304, *3.

At the second step, "there need not be objective evidence of the pain [or symptoms] itself or its intensity." *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). Such requirement is based on the fact that "'symptoms cannot always be

---

[5] Because the court has determined that the ALJ erred the court declines to address Plaintiff's remaining arguments. That said, upon remand, the ALJ should examine all of Plaintiff's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

measured objectively through clinical or laboratory diagnostic techniques.'" *Id.* (quoting

SSR 16-3p, 2016 WL 1119029, at \*4.)

"[A]n ALJ applies the incorrect legal standard in discrediting complaints 'based on

[a] lack of objective evidence corroborating them.'" *Oakes v. Kijakazi*, 70 F.4th 207, 215

(4th Cir. 2023) (quoting *Arakas*, 983 F.3d at 96); *accord* SSR 16-3p, 2017 WL 5180304,

at \*5 ("[W]e will not disregard an individual's statements about [their] symptoms solely

because the objective medical evidence does not substantiate the degree of impairment-

related symptoms alleged by the individual."). Rather, and with the restriction discussed

below, the ALJ is required to balance the record evidence because "[a] report of . . .

inconsistencies in the objective medical evidence is one of the many factors . . .

consider[ed] in evaluating" this prong. *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th

341, 360 (4th Cir. 2023) (quoting SSR 16-3p, 2016 WL 1119029, at \*5).

But a restriction applies where the claimant suffers from fibromyalgia or chronic

depression. In such cases, the Fourth Circuit has implemented the following:

> we join those circuits by holding that ALJs may not rely on
> objective medical evidence (or the lack thereof)—even as just
> one of multiple factors—to discount a claimant's subjective
> complaints regarding symptoms of fibromyalgia or some
> other disease that does not produce such evidence. Objective
> indicators such as normal clinical and laboratory results
> simply have no relevance to the severity, persistence, or
> limiting effects of a claimant's fibromyalgia, based on the
> current medical understanding of the disease.

*Arakas*, 983 F.3d at 97; *see also Hultz v. Bisignano*, 162 F.4th 111, 122 (4th Cir. 2025)

(citing *Arakas*, 983 F.3d at 97) ("*Arakas* held that ALJs may not rely on objective medical

evidence even as just one of multiple factors to discount a claimant's subjective

complaints regarding symptoms of fibromyalgia").

6

After *Arakas*, in *Shelley C.*, the Fourth Circuit extended this reasoning to "depression—particularly chronic depression," holding that it "is one of those other diseases" that does not produce objective medical evidence. *Shelley C.*, 61 F.4th at 360–61. Thus, an ALJ may not rely on objective medical evidence, or the lack thereof, as even one factor among many, to discount a claimant's subjective complaints regarding symptoms of chronic depression. *See id.*; *see also Hogan v. Bisignano*, No. 1:22-CV-135, 2025 WL 2443534, at *2 n.1 (M.D.N.C. Aug. 25, 2025) (citing *Shelley C.*, 61 F.4th at 361-62) (in "*Shelly C.*, the Fourth Circuit held for the first time that depression is a disease that does not produce objective medical evidence, and therefore subjective statements regarding its symptoms cannot be discounted based on objective medical evidence (or lack thereof)").

That said, to clarify, *Arakas* and *Shelley C.* do *not* prohibit ALJs from "weigh[ing] a plaintiff's subjective complaints against other evidence in the record, such as by comparing a plaintiff's hearing testimony to her previous statements, including those made during medical visits with her primary care provider and her statements regarding her activities of daily living. . . . Such weighing remains permissible under *Shelley C.* and *Arakas*." *Crystal G. v. Frank Bisignano, Comm'r, Soc. Sec. Admin.*, No. CV 25-0771-DRM, 2026 WL 785043, at *3 (D. Md. Mar. 20, 2026) (citation modified); *see also Kimberly S. v. Comm'r Soc. Sec.*, No. EA-23-1404, 2024 WL 5007372, at *7 (D. Md. Dec. 3, 2024) (ALJ's finding that plaintiff's "own subjective reports of improvement [of depression symptoms] with treatment and independent daily activities were inconsistent with the disabling limitations she alleged" was not impermissible reliance on absence of objective medical evidence).

7

Here, I find the ALJ erred by considering objective medical evidence in discounting Katrina-Laura's subjective complaints regarding her symptoms of depression. The ALJ crucially revealed that he relied on "objective medical evidence" to reject Katrina-Laura's complaints about her mental health symptoms *without noting an exception for her symptoms of depression.* Instead, the ALJ made the broad conclusion that "[Katrina-Laura's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 30.

But before further addressing the ALJ's error, the court must distinguish what evidence qualifies as "objective medical evidence." The term "objective medical evidence" is defined as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1502(g).

Importantly, mental status examinations are considered objective medical evidence. *See Mariah C. v. O'Malley*, No. 1:23-CV-0811 (LRV), 2024 WL 3092407, at *10 n.10 (E.D. Va. June 20, 2024) (noting mental status examinations are objective medical evidence that provides medical signs of mental impairments); *see also Britt v. Berryhill*, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *4 (W.D.N.C. Nov. 30, 2018) (noting the "ALJ evaluated the objective medical evidence, including mental status examinations"). Symptoms of depression include "'clear-cut changes in affect, cognition, and neurovegetative functions and *interepisode remissions*,' which are characterized by 'pervasive unhappiness and misery.'" *Shelley C.*, 61 F.4th at 367 (quoting Am. Psychiatric

8

Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 177, 184 (5th ed. 2013))

(emphasis original).

Here, at step two of evaluating her symptoms, the ALJ considered Katrina-Laura's

statements regarding her mental health symptoms as follows:

> Although the claimant alleged she was unable to work due to mental and physical impairments, the record is inconsistent with those allegations. Her mental health treatment predated the alleged onset date by at least one year, and she reported her mental health conditions dated back to childhood. She saw her psychiatrist later on in the same month of her alleged onset date, yet did not note anything regarding her employment ending at that time due to her anxiety. The note indicated, "Her husband has concerns for disability due to her inability to keep a long-term job." However, she was also staying home providing care for her young children while her husband worked. **Her affect was pleasant and calm. Her attitude was cooperative. Her speech, thought process, thought content, perception, orientation, short-term memory, long-term memory, concentration, insight, and judgment were intact.** Her intellect was estimated as slightly below average. She continued treating with her psychiatrist at Carilion and later transferred her medication management to a provider associated with her therapist in April 2023. Her reports of medication efficacy waxed and waned throughout the period of review with her reported increased irritability and difficulty controlling anger at some point and at others that she was doing well. **Overall, the claimant had normal mental status examination findings when treating with her mental health medication management providers.** The record shows she attended counseling for a few months, and she generally discussed her day-to-day activities and situational stressors. **Her counselor noted she had a depressed, anxious, or worried mood, but her affect, thought content, thought process, and perception were within normal limits.** She discussed activities during the period of review and in function reports included caring for her young children while her husband worked, shopping, driving, ability to manage finances, and going on a cruise with her husband and older children. She did not require any urgent care, emergency room treatment, or inpatient hospitalization for her mental health conditions. Her mental health impairments

were managed on an outpatient basis with visits to a psychiatrist every month to every few months.

R. 30–31 (emphasis added). As emphasized above, the ALJ considered Katrina-Laura's normal mental status examination findings in discounting her symptoms of her mental health diagnoses, including her depression. As a result, the ALJ erred in his analysis. *Arakas*, 983 F.3d at 97; *Shelley C.*, 61 F.4th at 361–62. As the Fourth Circuit made clear in *Shelley C.*, "depression is a condition that does not produce consistent objective findings and [ ] an ALJ may not rely on such findings, even as one factor among many, to discount subjective complaints." *Crystal G.*, 2026 WL 785043, at *4.

In sum, I find that remand is warranted because the ALJ impermissibly discounted Katrina-Laura's subjective allegations regarding her depression in reliance, in part, on objective medical evidence. *See Crystal G.*, 2026 WL 785043, at *4 (noting that an ALJ failed to follow *Shelley C.* when the ALJ considered the objective medical evidence—the claimant's mental status examinations—when evaluating the claimant's statements about the severity of her symptoms of depression).

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** under the fourth sentence of 42 U.S.C. § 405(g).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations

to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: June 5, 2026

C. Kailani Memmer
United States Magistrate Judge

11